**JAFFE, Plaintiff-Appellant, v. PATTERSON REALTY COMPANY and WEBSTER CLOTHES, Inc., Defendants-Appellees.**

Ohio Appeals, Second District, Montgomery County.

No. 2285.   Decided April 28, 1955.

Pickrel, Schaeffer & Ebeling, By Virgil Schaeffer and Wm. H. Selva, of Counsel, Dayton, for plaintiff-appellant.

Smith, Schnacke & Compton, By Murray Smith, of Counsel, Dayton, for defendant-appellee, Patterson Realty Company.

Kusworm & Kusworm, By Sidney G. Kusworm, of Counsel, Dayton, for defendant-appellee, Webster Clothes, Inc.

## OPINION

By MILLER, Presiding Judge:

This is a law appeal from a judgment of the Common Pleas Court decreeing that the plaintiff was entitled to have specific performance of

a certain contract entered into on or about April 7, 1947, whereby the plaintiff's assignor and the defendant, Patterson Realty Company, agreed to enter into a proposed lease for a certain storeroom located in the Callahan Building, Dayton, Ohio, and which was owned by the said defendant; that the lease of the defendant, Webster Clothes, Inc., for the same premises was subservient to that to which the plaintiff was entitled. The record reveals that in the summer of 1946 the Patterson Realty Company purchased the Callahan Building, and soon thereafter Mr. Lawson Jaffe, the plaintiff's assignor, contacted Mr. Patterson about leasing the storeroom in question, advising him that he was seeking a location for a jewelry store being operated by Bohlender and Royston, Jewelers, Inc., under the trade name of Royston's, and of which he was the principal stockholder; that the Royston lease expired in June, 1946, but that he had an oral extension for one year and that thereafter the rental was to be on a monthly basis, as the building was to be torn down and a new one erected, but the plans were indefinite as to just when the work would be started. The storeroom at the time was under lease to Chasebrook Clothes, Inc., which was operating a clothing store therein under the trade name of "Kibler Clothes." This lease was to expire on December 1, 1946, but it contained a clause providing for a five-year renewal which would extend it to December 1, 1951. Jaffe informed Patterson that he was attempting to purchase this lease, but as yet had been unable to come to terms. From all his representations it appears that Jaffe desired to obtain the room as soon as possible. Soon after the second meeting between Jaffe and Patterson, Jaffe turned over the negotiations for said lease to his agent, Mr. Clair Sammons, who had numerous conferences thereafter with Mr. Patterson and the manager of the building at which the terms and conditions of the lease were fully discussed, including certain alterations Jaffe was going to make on the premises. As a result of these conferences a copy of a proposed lease was mailed to Mr. Jaffe, which was complete in all details with the exception of the date of its execution and of its beginning and termination. The lease was accompanied by the following letter, which is the basis of this action:

"April 7, 1947

"Mr. Lawson Jaffe,
"Mayor's Jewelry,
"Third and Main Streets,
"Dayton 2, Ohio.
"Dear Mr. Jaffe—

"This will confirm our verbal agreement with respect to the leasing of the store room and space now occupied by Kibler's Clothing Store in the Callahan Building, Dayton, Ohio, now under lease to Chasebrook, Inc. to November 30, 1951.

"It is our understanding that you are now negotiating to secure an assignment of the Chasebrook, Inc. lease. Upon your acquisition of this lease and the vacation of the premises by the present tenant, or upon the expiration of the present lease, we agree to enter into a lease with you, substantially in the form attached hereto as 'Exhibit A,' which lease you may assign to the Bohlander—Royston Jewelries, Inc. without however releasing yourself from the obligations of the lease.

"If the foregoing correctly states our verbal agreement, and the attached form of lease is satisfactory to you, will you please sign a duplicate of this letter and return the same to us and it shall constitute our contract.

Very truly yours,

PATTERSON REALTY COMPANY

(Signed)  Robert Patterson

PRESIDENT"

Within thirty days after the receipt of this letter, Mr. Jaffe approved the same by signing in duplicate and forwarding it to Mr. Patterson. Nothing further was done thereafter except the fact that Jaffe continued his negotiations to acquire the Kibler lease, but in this he was not successful. Then on August 12, 1948, Patterson Realty Company sent the following letter to Mr. Jaffe:

"August 12, 1948.

"Mr. Lawson Jaffe,

"Mayor's Jewelry,

"Third and Main Sts.,

"Dayton 2, Ohio.

"Dear Mr. Jaffe:

"We are anxious to proceed with some remodeling of the Callahan Building and before doing so would like to have you confirm our view that neither we nor you are any longer obligated under our exchange of letters on April 7, 1947, relating to the store room occupied by Kibler's Clothing Store. More than a year has passed and you have not acquired the existing lease, nor have you evidenced plans to negotiate, therefore; we consequently presume that you have abandoned your plans for the use of this corner.

"If you have any different views, we shall be glad to discuss them with you.

Yours very truly,

PATTERSON REALTY COMPANY.

(Signed)  Park Wineland

Building Manager."

In reply to this letter Mr. Jaffe called Mr. Wineland on the telephone and told him that he had been working hard to acquire the Kibler lease but that even though he was unsuccessful, he still had a right to the lease under the contract. Later the Kibler Store was sold to Webster Clothes, Inc., and the lease was duly assigned to it. On October 12, 1949, an agent of the plaintiff wrote a letter to Webster Clothes, Inc., advising it of the plaintiff's contract for a fifteen-year lease at the termination of their lease expiring on December 31, 1951, and stating that Mr. Jaffe was desirous of negotiating with them with reference to obtaining possession prior to the expiration of their lease. Webster Clothes was also advised that the contract of April 7, 1947, as well as the proposed lease, was recorded in the Recorder's Office, Book No. 51, page 419, and upon its later request a photostatic copy of the recorded instruments was sent to Webster Clothes. With full knowledge of all these facts Webster Clothes entered into a new lease with Patterson Realty Company for a term of five additional years, making its lease expire on December 31, 1956.

The record also discloses that in accordance with the letter of April 7, 1947, Mr. Jaffe assigned all of his right, title and interest in the lease to Bohlander and Royston Jewelers, Inc., and who are now the plaintiffs in this action.

The lower court, in a well considered opinion, held that there was no mistake or patent or latent ambiguity in the agreement made on April 7, 1947, and therefore it was not subject to modification by parol evidence. It was of the further opinion that there was no condition precedent expressed in the alleged agreement because of the use of the conjunction "or" in the following sentence:

"Upon your acquisition of this lease and the vacation of the premises by the present tenant, or upon the expiration of the present lease, we agree to enter into a lease with you, * * *."

The court was also of the opinion that the defendant, Webster Clothes, had actual knowledge of the plaintiff's claim to a lease, and therefore its lease was subservient to that of the plaintiff's. We are in full accord with the court's legal and factual conclusions, and the reason for the same given in a well considered opinion; hence, a further discussion of these questions would serve no useful purpose.

The defendants are urging, however, that from all the evidence presented, the court should have found that the acquisition of the existing lease was a condition precedent and since it was never acquired the agreement of April 7, 1947, never became effective. We have scrutinized the record most carefully on this point and find no evidence to support the defendant's claim that there was a meeting of the minds in that the plaintiff was to first acquire an assignment of the present lease. The only evidence on this question requires us to conclude that representations were made that Mr. Jaffe wanted to acquire the premises at the earliest date possible. This falls far short of constituting an agreement that it would be done before the alleged contract would become effective. A statement made by Judge Matthias in the case of **Montgomery v. Board of Education, 102 Oh St 189**, at **page 193**, seems most appropriate to the facts presented on this issue, to-wit:

"The contingency which here occurred was one which might well have been foreseen and provided against in the contract, but was not. The law will not insert by construction for the benefit of one of the parties an exception or condition which the parties either by design or neglect have omitted from their own contract."

This Court, in **Goodman v. Sullivan, 94 Oh Ap 390**, held that a condition precedent may not be implied when the same might have been foreseen and provided against by express agreement. Likewise, we cannot give such implication from the facts presented in the case at bar.

The record reveals that the answer of the Patterson Realty Company prayed that the alleged contract be declared void and of no legal effect, or, in the alternative, that the court reform said agreement so as to conform to the intention and understanding of the parties, to-wit: That Mr. Jaffe be obligated to spend not less than $50,000.00 for improving the interior and exterior of the premises. The lower court ordered the reformation to be made, holding that there was a mutual mistake or inadvertence on the part of both the plaintiff and defendant, Patterson

Realty Company, in omitting as one of the clauses of the proposed lease that the plaintiff herein, before taking possession under the fifteen-year lease, would expend for his own benefit and the benefit of Bohlander and Royston a minimum of $50,000.00 for the improvement of the front entrance of the building and the storeroom. The only provision in the lease relating to remodeling, found after the enumeration of sixteen specific conditions to the same, entitled "The Conditions of This Lease," is as follows:

"IT IS UNDERSTOOD that upon taking possession under this lease the LESSEE intends to remodel the premises. Detailed plans of the alterations are to be submitted by the LESSEE to the Lessor for suggestions and final written approval before the work is started. All such alterations and changes shall be made in a high-grade manner and by expert workmen and at the expense of the LESSEE. At the time the alterations are made, the Lessor agrees to improve the front entrance of the facade and doors and to erect a new modernistic cigar stand, at the expense of the Lessor. The LESSEE shall have the privilege of a small recessed window display in the lobby of the office building, the size and design of which are to be subject to the approval of the Lessor. During the period of alterations the LESSEE shall be entitled to the abatement of one (1) month's rent."

It is to be noted that the lease makes no mention of the minimum cost of the remodeling, but the only requirement is that the detailed plans be submitted to the Patterson Realty Company "for suggestions and final written approval before the work is started." In order that reformation may be had on the grounds of mistake the standard of proof required is that the evidence must be clear and convincing. 16 O. Jur. 174, and cases cited. We find no evidence in the record tending to sustain Patterson's contention that it was mutually agreed by the parties that $50,000.00 would be spent on the remodeling. It does show, however, that the cost of repairs was discussed, Mr. Jaffe stating that it might cost as much as $60,000.00. It appears to us that it is not the cost of repairs that is of prime importance here, but rather that the plans and specifications be in accordance with the representations made by Jaffe as to the remodeling that he would do after acquiring the lease. Since it is silent as to the nature of the work to be performed, this may be established by parol evidence. Mr. Jaffe and his associates are bound by these representations and failure of performance on their part would constitute a breach.

We cannot, however, on the facts presented order that the terms of the lease be modified as requested; otherwise, our judgment will be the same as that of the Common Pleas Court.

HORNBECK and WISEMAN, JJ, concur.