MARSHALL et, Plaintiffs, v. SMITH et, Defendants.

Common Pleas Court, Miami County.

No. 38987. Decided December 19, 1960.

Mr. J. Richard Gaier, for plaintiff.
Messrs. McCulloch, Felger & Fite, for defendant Hubert E. Smith and Ruth E. Johnson.
Mr. Melvin L. Schottenstein, for defendant Stone Grill Company.

PORTER, J. As indicated in the stipulation, the sole issue in this case is whether or not the plaintiff and the defendant, Stone Grill Company, are obligated under the lease attached to the petition, in view of the provision therein—"lessee covenants and agrees to use said premises in the operation of a tavern business and for no other purpose" and the fact that the township in which the leased premises are located was voted "dry."

For the purpose of determining this the parties have fur-

ther agreed that the Court can accept as true the allegations on the first page of the petition. Here among other things, it is alleged that on January 29, 1960, the plaintiffs by order of the State of Ohio, Department of Liquor Control, were required to surrender their permit for sale of alcoholic beverages, and plaintiffs are no longer able to engage in the operation of a tavern.

Each of the defendants has agreed and so notified the plaintiff that they waive this provision of the lease so that they are free to use it for any lawful and legal purpose.

The question is whether or not the tenant is still obligated under the lease as a result of the township being voted dry.

In a similar case where the lease of a storeroom provided that it was to be used for the sale of beer, wine, liquor and food, without providing for the contingency of a refusal of the Board of Liquor Control to allow the transfer of the lessee's liquor license, it was held that the refusal of the Board of Liquor Control to allow such transfer does not affect the lessee's liability for rent. *Goodman, Jr., et al* v. *Sullivan,* 94 Ohio App., 390 (1952). In that case Judge Hornbeck called attention to an annotation in 22 A. L. R. 821 to *Imbeschied, Trustee* v. *Lerner,* 241 Mass., 199, 135 N. E., 219, under the topic, "Effect of interference by law with liquor business on lease of property for that purpose."

In this annotation, it is pointed out that the cases upon this question fall into two main classes, depending upon whether or not the lease is solely for the transaction of the liquor business. "If it is not, the courts are practically unanimous in holding that the prevention of such business by law does not affect the tenant's liability for rent. If the sole purpose of the lease is that the leased property shall be devoted exclusively to the liquor business, there is a conflict of authorities as to whether or not the liability for rent is affected by the prevention of the business by law. This conflict depends on which of two fundamental principles the courts apply in the solution of the problem before them. One rule is that in the absence of a convenant in the lease relieving the tenant from liability, his liability continues even though the property is destroyed or becomes useless by casualty over which he has no control. * * * The other prin-

ciple is that if the performance of a contract is made unlawful after the contract is entered into, it becomes void and both parties are relieved from further liability under it.''

Plaintiffs urge that they are within the cases which hold that the lease is avoided. Those are cases in which the use of the premises is limited to the sale of intoxicating liquors. 22 A. L. R., 821, 828. The basis for plaintiff's contention is that the lease in question provides that the ''lessee covenants and agrees to use said premises in the operation of a tavern business *and for no other purpose.*'' (Emphasis supplied.)

The basis of those cases from the prohibition era seems to be (829) that ''where the performance of an executory contract which was lawful in its inception is made *unlawful* by subsequent enactment, the agreement is thereby dissolved and the parties discharged from its obligation.'' Perhaps prohibition statutes made unlawful the leasing of premises for the sale of liquor. Voting a township dry does not do so. It makes it *impossible* for the lease to be performed, such as it is in cases where the leased premises are destroyed by fire, which, in the absence of statutes such as Section 5301.11, Revised Code, does not operate to relieve the tenant's liability for rent. 33 Ohio Jurisprudence 2d, 627. While this is believed to be a distinction which should be pointed out it should not make a difference.

Can it be said in the instant case that the lease limited the use of the premises to the sale of intoxicating liquors? It says it is to be used for a tavern and for no other purpose. The best judgment of the court is by ''tavern'' the parties meant a saloon—a place primarily and predominatly one for the retail sale of beer, wine and liquor, though food is usually served. It must have been important to the lessors that the location be used for that purpose and none other. If it had been used for other purposes they would undoubtedly have taken steps to correct the situation. Hence it is reasonable to conclude that the case is one in which the use of the premises was ''limited to the sale of intoxicating liquors.''

In his opinion in the *Goodman case,* Judge Hornbeck makes it clear that it is based on a principle enunciated by Judge Matthias in *Montgomery* v. *Board of Education*, 102 Ohio St., 189, 15 A. L. R., 715, ''which, though not a blue bottle case, is helpful because it enunciates a principle which is applicable: 'The con-

tingency which here occurred is one which might well have been foreseen and provided against in the contract, but was not. The law will not insert by construction for the benefit of one of the parties an exception or condition which the parties either by design or neglect have omitted from their own contract.' " (This case has been cited with approval as authority for the larger proposition that a condition precedent may not be implied when the same might have been foreseen and provided against by express agreement. *Jaffe, etc.* v. *Patterson Realty Co., etc.*, 72 Ohio Law Abs., 147, 150.)

In the *Goodman case* the facts were that the lessee failed to get a permit transferred to the leased premises because of its proximity to a school. Undoubtedly the lessee should have foreseen that the Liquor Board might refuse his request to transfer his permit, so the *Goodman case* is sound. The Court feels that the fact that the township might go dry is one that is much more apt to be overlooked than foreseen by the contracting parties. Hence a holding in favor of the defendants does not run afoul of the *Goodman* and other cases which hold that a condition may not be implied when the same might have been foreseen and provided against by express agreement.

Support for this position is found in one of the prohibition era cases in which it was said the "contract was made in the light of the law as it existed at that time, and they were not bound to anticipate that future legislation would prevent a performance of their obligation." *Doherty* v. *Monroe Eckstein Brewing Co.* (1921), 115 Misc., 175, 187 N. Y. Supp., 633, 22 A. L. R., 828.

It has been observed editorially that "it would seem that justice would favor a leaning toward the rule which would relieve the tenant from the situation from which he had entered in good faith, when, by reason of change in laws, a loss must fall somewhere, and there is nothing to suggest why the landlord should not bear a portion of it * * *." 22 A. L. R., 821. In this same text it is observed: "When the rules governing the relation of landlord and tenant were formulated, social conditions were such that the rights of the tenant appeared to receive less consideration than those of the landlord, and there-

.fore, in modern times [1923], it would seem etc. * * *." This court agrees and concludes that it is time that the courts strike out—thirty-seven years later—in the direction the legislature did when it passed Section 5301.11, Revised Code, in 1868.

The holding of the Court therefore is that the matter of the township being voted dry is ordinarily not one which can be foreseen. When it happens a lessee under a lease in which he has covenanted and agreed to use said premises in the operation of a tavern business and *for no other purpose* the performance of the contract becomes impossible and, even though the lessor has (after the fact) agreed to waive said covenant, both parties are relieved of further liability under the lease in the absence of an express provision such as that provided in Section 5301.11, Revised Code.

Implicit in this decision is the holding that by "tavern" the parties mean a saloon, a place primarily and predominately one for the retail sale of beer, wine and liquor, though food is usually served.

Entry accordingly, with exceptions to the defendant.